UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERK'S OFFICE

04-30042-MAP

U.S. DISTRICT COURT
DISTRICT OF MASS

------------------------------------------------------------ X

Jimmy Suo, on behalf of himself and all others
similarly situated,

                 Plaintiff,

    - against-

WAVE SYSTEMS CORP.,
STEVEN SPRAGUE and GERARD T. FEENEY,

               Defendants.

------------------------------------------------------------ X

Civil Action No.

**CLASS ACTION COMPLAINT
FOR VIOLATIONS OF
FEDERAL SECURITIES LAWS**

**JURY TRIAL DEMANDED**

Plaintiff Jimmy Suo, by his attorneys, for his complaint against defendants Wave

Systems Corp., Steven Sprague and Gerard T. Feeney, alleges as follows:

## NATURE OF THE ACTION

1.    This is a securities fraud class action on behalf of the purchasers of the

common stock of Wave Systems Corp. ("Wave" or the "Company") between July 31, 2003 and

December 18, 2003 (the "class" and the "class period," respectively). Defendants defrauded the class

by issuing and/or failing to correct materially misleading and false public statements during the class

period regarding certain agreements to license Wave software products ("Licensing Statements").

On December 18, 2003, Wave announced that the Securities and Exchange Commission ("SEC")

began a formal probe of such Licensing Statements made by the Company as well as certain trading

in Wave's securities during such time.

2.    During the class period, Wave common stock traded as high as $5.24 per

share. On December 19, 2003, after defendants' materially false and misleading statements were

revealed and corrected, Wave common stock declined to $1.38 per share.

3.    Plaintiff brings this action on behalf of himself and all others who purchased Wave common stock during the class period who have been damaged as a result of defendants' conduct.

## JURISDICTION AND VENUE

4.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. §240.10b-5.

5.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

6.    Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1931(b). In addition, venue is proper in this district because many of the material acts and injuries alleged in this Complaint occurred within this District. Such acts include practices and conduct that violated the Exchange Act.

7.    The Company's principle executive offices are in Lee Massachusetts where the day-to-day operations of the Company are directed and managed.

8.    In connection with the acts, conduct, and other wrongs complained of herein, the defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including the mails, telephone communications and the facilities of interstate commerce.

## THE PARTIES

9.    Plaintiff purchased shares of Wave common stock at artificially inflated prices as set forth in the attached certification.

2

10.     Defendant Wave Systems Corp. develops hardware and software-based security products.

11.     Defendant Steven Sprague was, at all relevant times, the chief executive officer of defendant Wave.

12.     Defendant Gerard T. Feeney was, at all relevant times, the chief financial officer of defendant Wave.

## CLASS ACTION ALLEGATIONS

13.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of a class consisting of all persons and entities who purchased, converted, exchanged or otherwise acquired the common stock of Wave during the class period, between July 31, 2003 and December 18, 2003.

14.     Excluded from the class are defendants, the officers and directors of the Company, members of their immediate families and their legal representatives, heirs, successors and assigns, and any entity in which the Company has or had a controlling interest.

15.     The class is so numerous that joinder of all class members is impracticable. While the exact number of class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are thousands of members of the Class.

16.     Wave's shares are traded over the counter on the NASDAQ exchange under the ticker symbol "WAVX."

17.     As of December 24, 2003, over 63.5 million shares of Wave common stock were issued and outstanding. Plaintiff's claims are typical of the claims of the members of the class

3

because all members of the class purchased Wave common stock during the class period and sustained damages arising out of defendants' wrongful conduct.

18.    Wave's shares were publicly traded in an efficient, open and well-informed market which assimilated the information about the Company.

19.    Plaintiff will fairly and adequately protect the interests of the members of the class, has retained counsel competent and experienced in class action and securities litigation, and has no interests antagonistic to or in conflict with the other members of the class.

20.    To achieve the fair and efficient adjudication of this controversy, a class action is superior to other methods. Joinder of all class members is impracticable. The likelihood of individual class members prosecuting separate claims is remote because the damages suffered by many individual class members are relatively small and the expense and burden of individual litigation likely would prevent class members from seeking individual redress. No unusual difficulties are likely to be encountered in the management of this class action.

21.    Common questions of law and fact exist for all members of the class and predominate over any questions applicable to individual members of the class. Among the questions of law and fact common to the class are:

      a.    did defendants violate the federal securities laws;

      b.    did defendants issue and/or fail to correct misleading public statements about agreements to license Wave software products;

      c.    did defendants act knowingly or recklessly when they made the materially false and misleading statements or omissions;

      d.    were the market prices of Wave shares artificially inflated during the class period because of defendant's conduct; and

4

e.    did members of the class sustain damages as a result of improper conduct by the defendants and, if so, what is the proper measure of damages.

## FACTS

22.    Wave is a development stage company that develops, produces and markets hardware and software based digital security products for the Internet and e-commerce. Wave's operations to date have consisted primarily of product development.

23.    Wave's primary security product is called the EMBASSY Trust System (the "ETS"). The ETS is a combination of client hardware and software and a back-office infrastructure that manages its security functions. The client hardware consists of the EMBASSY 2100 security chip that may be embedded in devices such as computer keyboards, smart card readers, PC motherboards, PC and cable set-top boxes to securely store the user's personal information such as usernames, passwords, personal identification numbers and credit card information. In addition, the EMBASSY system stores encrypted software applications for performing a variety of secure functions such as authentication, e-commerce and digital rights management, electronic payments and metering of digital content.

24.    On July 31, 2003, the Company issued a press release entitled "Wave Systems Announcement." The press release stated in part:

> Wave Systems Corp. announced an agreement today with Intel Corporation that will help enable both companies to accelerate the development and deployment of trusted applications and services for safer computing on personal computer platforms.

> The agreement will enable Intel to bundle Wave's software and services with a future Intel desktop motherboard, targeted for trusted computing platforms.

> "Wave helps fill a critical requirement for trusted computing services," said Michelle Johnston, acting director of marketing for Intel Desktop Board Operations.

"We believe the EMBASSY® Trust Suite software will provide good value for our customers looking for trusted computing applications."

"Wave has been working closely with Intel on the development of application and service solutions," said Brian Berger, senior vice president, Global Business Development, Wave Systems. "Both companies believe that in order to accelerate adoption in the marketplace, it is critical to identify and offer an attractive introductory set of services and high value applications. We are delighted to be working with Intel by providing solutions for this emerging market."

"Wave believes that a portfolio of services will make trusted computing an important part of the personal computing market going forward. It is our job, to work with industry leaders like Intel, to help identify and develop those services that will bring the most value to the enterprise as trusted hardware is deployed and a more secure computing environment becomes a reality." Berger said.

25.    The July 31, 2003 press release was materially false and misleading because it failed to disclose that under the purported agreement between Intel and Wave, Intel was not required to purchase any Wave software and that any revenues resulting from the agreement were speculative and would not occur until at least 2004, if at all.

26.    However, because the press release gave the impression that a real agreement with anticipated material revenue was entered into between the Company and Intel,  the price of Wave's surged on the heels of the July 31, 2003 announcement.  The price of Wave shares rose dramatically from a closing price of $0.84 on July 30, 2003 to a trading high of $5.04 on August 1, 2003.

27.    Just days later the Company issued yet another materially false and misleading press release. On August 4, 2003, the Company issued a press release entitled "Wave Systems Makes Enterprise Applications More Secure Than Ever; IBM's Independent Software Vendor (ISV) Program Helps Wave Systems Create More Secure Applications for the Enterprise User." The press release stated in part:

6

Wave Systems Corp. today announced that the new Document Manager Vault and SmartSignature security software applications in Wave's EMBASSY® Trust Suite client software family work with the IBM Embedded Security Subsystem, a hardware and software-based security solution available on select ThinkPad notebooks and ThinkCentre desktops, to create more secure applications for the business user.

The compatibility of Wave's security software applications with IBM's hardware and software security solution is a result of Wave's successful participation in IBM's Independent Software Vendor program. This partnership is another example of IBM's commitment to help independent software vendors use IBM's hardware and software-based security system to make computing as secure as possible for the end-user.

"The early stages of any emerging market are critical. IBM has clearly established their leadership in trusted computing with their family of Embedded Security System personal computers," said Lark Allen, executive vice president, Wave Systems. "Wave's partnership with IBM will significantly help us in our objective to deliver open and interoperable solutions to business customers as trusted computing continues to evolve."

Leveraging the IBM security chip for personal computers, the Wave EMBASSY Trust Suite Client Business Edition includes the first of many new applications aimed at business users: Wave's Document Manager Vault and SmartSignature. Wave's EMBASSY Trust Suite represents one of the first portfolios of user software applications, administrative tools, and trust-based systems developed specifically around the new Trusted Computing Group (TCG) specification.

Wave's Document Manager Vault application offers a user-controlled vault for storage of private data, such as encrypted files and folders on personal computers. Document Manager Vault offers the choice of a simple drag-and-drop mechanism, as well as a set of integrated plug-ins for popular office tools to encrypt and decrypt any type of file on a local PC. By using IBM's Embedded Security Subsystem in conjunction with Document Manager Vault, sensitive data is protected even if the PC is lost or stolen.

28.    The August 4, 2003 press release was materially false and misleading because it failed to disclose that this "partnership" with IBM would result in no direct revenues to Wave. Although the press release was intended to, and did in fact, give the market every impression that the "partnership" with IBM represented a milestone event, in realty the press release did not report any event that was reasonably expected to have any material impact on Wave's revenue and earnings.

29.    On August 4, 2003, at 8:31 AM., a news release was issued by Reuters entitled "Wave Systems embed with IBM, Intel." The news release stated:

Wave Systems on Monday said it had agreed to a deal with IBM to embed its software inside selected IBM notebook and desktop computers, marking the latest in a string of deals for the tiny company. Wave Systems of Lee, Massachusetts said its embedded software would be available on selected IBM ThinkPad notebooks and ThinkCentre desktops that include IBM's digital security subsystem.

Shares of the previously thinly traded stock have rocketed in the past three days after Wave announced a deal with Intel, the world's biggest chipmaker, to embed its software inside some internal computer chassis built by Intel.

30.    This press release was materially false and misleading because IBM never actually agreed to embed Wave's technology in its products. Even though defendants knew this press release was materially false and misleading, defendants took no steps to have it corrected (until it was corrected more than four months later on December 19, 2003).

31.    Rather, defendants permitted the market to believe that a deal was reached between IBM and Wave to embed Wave's software in IBM's products. The market therefore perceived that the recently announced deals with Intel and IBM would have a material positive effect on the Company's revenues and earnings. As a result, the price of Wave's shares traded as high as $4.96 a share on volume of over 45 million shares on August 4, 2003, and reached a high of $5.24 per share on the following day, August 5, 2003.

32.    Defendants took advantage of the dramatic rise of the price of Wave's shares as a result of the misleading press releases issued by the Company on July 31, 2003 and August 4, 2003 and the false and misleading August 4, 2003 news release issued by Reuters that the Company allowed to permeate into the market, and sold substantial amounts of their Wave common stock.

33.    On August 5, 2003, just one day after Wave's announcement of its "partnership" with IBM, defendant Feeney sold 100,000 shares of Wave at $5.00 per share for proceeds of $500,000.00.

34.    On August 6, 2003, defendant Sprague sold 150,000 shares of Wave at prices ranging between $3.14 and $3.47 per share, reaping $492,636.00 in proceeds from the sales.

35.    Defendants took further advantage of Wave's artificially inflated stock price during the class period by completing a $7.1 million private placement announced on November 19, 2003 in a press release entitled "Wave Systems Completes $7.1 Million Private Placement Financing." The press release stated in part:

> Wave Systems Corp., a leading developer of trusted computing solutions and services, announced today that it has completed a $7.1 million private placement of Class A common stock and warrants with a group of institutional and accredited investors. The financing is intended to fund Wave Systems' ongoing operations, specifically its sales and marketing efforts, as well as its engineering, development and customer support teams and its general corporate overhead. The private placement consists of 3,725,263 shares of common stock priced at $1.90 per share as well as warrants to purchase 1,095,227 shares of the company's common stock at an exercise price of $2.62 per share. If exercised in their entirety, the warrants would generate an additional $2.9 million in gross proceeds to Wave. J. P. Carey Securities acted as the agent for the private placement.

36.    On December 18, 2003, after the close of trading, Wave issued a press release announcing that the SEC began a formal probe of certain public statements made by the Company during and around August 2003 as well as certain trading in Wave's securities. The press release, entitled "Wave Systems Notified of SEC Investigation" stated in part:

> Wave Systems Corp. today reported that the Securities and Exchange Commission has commenced a formal investigation into certain matters relating to Wave. The SEC's investigative order, received by Wave on December 17, 2003, relates to certain public statements made by Wave during and around August 2003, as well as certain trading in Wave's securities during such time.

37.    Months after defendants collectively sold over $8 million worth of Wave stock at artificially inflated prices, on December 19, 2003, Reuters issued a news release entitled "CORRECTED-Wave Systems signs IBM deal and shares rise 20 pct." The news release stated in part:

> In Aug. 4 NEW YORK story headlined "Wave Systems signs IBM deal and shares rise 20 pct" please read in first paragraph ... a deal with IBM in which its software would be compatible with selected IBM notebook and desktop computers ... instead of ... a deal with IBM to embed its software inside selected IBM notebook and desktop computers
>
> In second paragraph please read ... its software would work with selected International Business Machines Corp. (NYSE:IBM – News) ThinkPad notebooks and ThinkCentre desktops ... instead of ... its embedded software would be available on selected International Business Machines Corp. (NYSE:IBM – News) ThinkPad notebooks and ThinkCentre desktops...
>
> In sixth paragraph please read ... the Wave security software compatible with IBM computers would be available ... instead of ... IBM computers with built-in Wave security would be available...

38.    Although the Defendants knew the August 4, 2003 news release was false and misleading when it was issued on August 4, 2003 at 8:31 AM, defendants deliberately or with reckless disregard failed to have it corrected until at least December 19, 2003, which was months after defendants reaped a windfall by selling Wave stock at artificially inflated prices.

39.    In reaction to the correction, on December 19, 2003, Wave common stock declined to a low of $1.38 a share and closed at $1.50 a share.

40.    Defendants' misleading public statements about its licensing agreements with Intel and IBM, their failure to disclose material facts necessary to make such public statements not misleading and their failure to correct the news releases regarding the Company they knew to be materially false and misleading have caused plaintiff and other members of the class to suffer millions of dollars in losses relating to purchases of Wave common stock.

## COUNT I

### FOR VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10(b)-5 PROMULGATED THEREUNDER AGAINST ALL DEFENDANTS

41.    Plaintiff repeats and realleges each of the preceding paragraphs as though fully set forth herein.

42.    During the class period, defendants public statements were misleading because they failed to disclose that any revenues resulting from the agreement with Intel was speculative and would not occur until at least 2004, if at all; that its "partnership" with IBM would result in no direct revenues to Wave; and failed to correct news releases widely disseminated to the public stating that IBM agreed to embed Wave's software in its products even though defendants knew such news release was materially false and misleading.

43.    Plaintiff and other members of the class relied on these positive but materially false and misleading public statements and believed them to be true.  In reliance upon these misleading public statements, plaintiff and the other members of the class purchased Wave securities at artificially inflated prices during the class period, and were damaged thereby.

44.    Defendants knew, or were deliberately reckless in failing to know, of the material omissions and misstatements contained in their public statements and were motivated by their desire to increase the price for Wave common shares.

45.    By reason of the conduct alleged herein, defendants, and each of them, knowingly or with deliberate recklessness violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, in that they (a) employed devices, schemes and artifices to defraud, (b) made untrue statements of material facts or omitted to state material facts necessary in order to make

statements made, in light of the circumstances under which they were made, not misleading, and (c)

engaged in acts, practices and a course of business that operated as a fraud and deceit upon plaintiff

and the other members of the class in connection with their purchases of shares of the Company's

securities during the class period.

46.    Plaintiff and other members of the class suffered substantial damages in that,

in reliance on the integrity of the market, they paid artificially inflated prices for the Company's

securities as a result of defendants' violations of Section 10(b) of the Exchange Act and Rule 10b-5.

At the respective times of the purchases during the class period by plaintiff and the other members of

the class, the fair market value thereof was substantially less than the prices which they respectively

paid for said securities.

## COUNT II

### FOR VIOLATION OF SECTION 20(a) OF
### THE EXCHANGE ACT AGAINST THE INDIVIDUAL ALL DEFENDANTS

47.    Plaintiff repeats and realleges each of the preceding paragraphs as though fully

set forth herein.

48.    During the class period, each of the individual defendants were controlling

persons of Wave within the meaning of Section 20(a) of the Exchange Act by virtue of their

executive positions and/or directorship at Wave and their specific acts.

49.    Wave concealed from plaintiff and the other members of the class during the

class period material facts which each of the individual defendants were privy to and had actual

knowledge of.

50.    Each of the individual defendants had the power and influence, and exercised the same, to cause Wave to engage in the unlawful conduct and practices complained of herein by causing Wave to disseminate the false and misleading information referred to above.

51.    By virtue of the foregoing, the individual defendants have violated Section 20(a) of the Exchange Act.

52.    By virtue of the conduct alleged above, the individual defendants are liable to the plaintiff and the other members of the class for the substantial damages which they suffered in connection with their purchases of Wave common stock during the class period.

**WHEREFORE**, plaintiff demands judgment on behalf of himself and the members of the class as follows:

A.    Declaring that this action be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.    Granting judgment in favor of plaintiff and the other members of the class against defendants herein, and each of them, for compensatory damages; together with pre-judgment interest at the maximum rate allowable by law;

C.    Awarding plaintiff the costs and disbursements of this action, including reasonable allowances of fees for plaintiff's attorneys and experts; and

D.    Granting plaintiff and the class such other and further relief as the Court deems just and proper.

Dated: February ___, 2004

**BERMAN DEVALERIO PEASE
TABACCO BURT & PUCILLO**

Jeffrey C. Block, BBO # 600747
Michael T. Matraia, BBO # 633049
Leslie R. Stern, BBO #631201
One Liberty Square
Boston, MA 02109
(617) 542-8300

Eduard Korsinsky
**ZIMMERMAN, LEVI & KORSINSKY LLP**
39 Broadway, Suite 1440
New York, New York 10006
(212) 363-7500

Harold Obstfeld, Esq.
Harold Obstfeld P.C.
260 Madison Avenue - 18th Floor
New York, New York 10016
(212) 696-1212

Attorneys for Plaintiff

G:\Securities\Wavesystems\Pleading\Wavesystems_Complaint.doc

14

**CERTIFICATION OF NAMED PLAINTIFF**
**PURSUANT TO FEDERAL SECURITIES LAWS**

_Jimmy Suo_ _____ duly certifies and says, as to the claims asserted under the federal

securities laws, that:

    1.    I have reviewed the complaint and authorized its filing.

    2.    I did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in

order to participate in this private action.

    3.    I am willing to serve as a representative party on behalf of the class, including providing testimony at

deposition and trial, if necessary.

    4.    I engaged in the following transactions (buy/sell) in Wave Systems Corp. Common Stock during the

class period:

| DATE | TRANSACTION | NO. OF SHARES | PRICE |
|---|---|---|---|
| 8/6/2003 | Buy | 780.00 | 3.77 |
| 11/03/2003 | Sell | 780.00 | 2.65 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

    5.    Within the last 3 years, I have not served as a class representative in any federal securities fraud case

other than: _____

    6.    I will not accept any payment for serving as a representative party on behalf of the class beyond the

Plaintiff's pro rata share of any recovery, except as ordered or approved by the court, including any award for reasonable

costs and expenses (including lost wages) directly relating to the representation of the class.

    I hereby certify, under penalty of perjury, that the foregoing is true and correct.

Dated: _2/ 09_ , 2004            _____

                                          Name: